# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

JEFFREY SCHLOSSER,                          :
     Plaintiff,                          :
                          :
     v.                          :     Case No. 3:20-cv-434 (SRU)
                          :
NURSE LINDA CARTER, ET AL.,                 :
     Defendants.                          :

## <u>INITIAL REVIEW ORDER</u>

Jeffrey Schlosser, currently confined at Cheshire Correctional Institution ("Cheshire") in Cheshire, Connecticut has filed an amended complaint under 42 U.S.C. § 1983 against thirty-four defendants associated with the Connecticut Department of Correction: Commissioner Rollin Cook[1], Deputy Commissioners Cheryl Cepelak and Angel Quiros, Director of Health Services Doe, District Administrator No. 1 Doe, Medical Regional Supervisor Kozak, Director of Programs and Treatment W. Murphy, Deputy Warden of Programs and Treatment Jennifer Peterson, Warden Kenneth Buttricks, Deputy Wardens Jesus Guadarama, Jeanette Maldonado and Walker, Medical Supervisors Cheatman[2], Jackson, ASN Jones, Mark V. and Cassandra Miller, Nurses Linda Carter, Shannon Droughn, Chelsea, Julie, Stacy, Natalie, Odo, John Doe 1, John Doe 2, Doe 1, Doe 2, Doe 3 and Doe 4,[3] Counselor Supervisor Tiriolo, Correctional Officer

---

[1] Since Schlosser filed this action, Quiros has replaced Cook as Commissioner. *See* CONNECTICUT STATE DEPARTMENT OF CORRECTION, https://portal.ct.gov/DOC/Search-Results?SearchKeyword=commissioner. This order refers to the positions the defendants held at the time Schlosser filed this action.

[2] In both this action and the previous action he filed alleging denial of medical care at NHCC, Schlosser identifies this defendant as "Cheatman." *See Schlosser v. Droughn, et al.*, Case No. 3:19-cv-1445 (SRU) (D. Conn. Sept. 13, 2019). In response to Schlosser's amended complaint in that action, the Department of Correction clarified that defendant is actually "Tiara Cheatham." Accordingly, I assume that Schlosser is referring to Tiara Cheatham here, too.

[3] Schlosser lists the Doe defendants in the caption of the amended complaint as follows: Nurse John Doe, Nurse John Doe, Nurse Doe, Nurse Doe, Nurse Doe, Nurse Doe. He identifies all six of the Nurse Doe defendants as having worked at Cheshire. In in this order, I refer to the two Nurse John Doe defendants as Nurse John Doe 1 and Nurse John Doe 2 and the four Nurse Doe defendants as Nurse Doe 1, Nurse Doe 2, Nurse Doe 3 and Nurse Doe 4.

McMahon, Governor Ned Lamont and Lieutenant Governor Susan Bysiewicz.  Schlosser has

also filed a motion for appointment of counsel and a motion for temporary restraining order and

preliminary injunction.

 For the following reasons, the amended complaint is **dismissed**. The motions for

appointment of counsel and for a temporary restraining order and preliminary injunction are

**denied.**

### I.     Standard of Review

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil

complaints and dismiss any portion of the complaint that is frivolous, malicious, fails to state a

claim upon which relief may be granted, or seeks monetary relief from a defendant who is

immune from such relief.  28 U.S.C. § 1915A.  This standard of review "appl[ies] to all civil

complaints brought by prisoners against governmental officials or entities regardless of whether

the prisoner has paid [a] filing fee." *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (internal

quotation marks and citation omitted).

Although detailed allegations are not required, a complaint must include sufficient facts

to afford the defendants fair notice of the claims and grounds upon which they are based and to

demonstrate a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The

plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."

*Twombly*, 550 U.S. at 570.  Nevertheless, it is well-established that "[p]*ro se* complaints 'must be

construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v.*

*Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*,

470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir.

2010) (discussing special rules of solicitude for *pro se* litigants).

## II.   Background

Schlosser's amended complaint includes allegations regarding medical treatment and conditions of confinement at New Haven Correctional Center ("NHCC") from November 2018 to January 2020[4]; medical treatment at MacDougall-Walker Correctional Institution ("Walker") in February and March 2020 after sentencing; and medical treatment and at Cheshire Correctional Institution ("Cheshire") in March and April 2020 after sentencing. Schlosser generally alleges that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth and Fourteenth Amendments by failing to administer his prescribed medications on certain days, improperly crushing the medication before giving it to him and using the wrong tools to crush the medication in an unsanitary manner. I address his claims regarding each correctional facility separately.

### 1.   New Haven Correctional Center

At some point prior to December 1, 2018 Schlosser was prescribed Gabapentin, Clonidine and Venlafaxine for various conditions, including anxiety. Am. Compl. Doc. No. 10, at ¶¶ 40-41, 43, 72. When he misses doses of those prescriptions, Schlosser experiences agitation, anxiety, migraine headaches, emotional lability, the sensation of electric shocks or "brain zaps" and "rebound hypertension, which is blood pressure that is even higher than the hypertension itself." *Id.* at ¶ 40, 43.  He is also at risk of suffering seizures from missing doses of the Gabapentin. *Id.* Schlosser notes that Gabapentin, which comes in a pill form, should not be crushed because it has "a time-release outer coating." *Id.* at ¶ 41.

---

[4] It is not entirely clear whether Schlosser was a pretrial detainee or was serving a sentence on a separate violation of probation at this time. *See* STATE OF CONNECTICUT JUDICIAL BRANCH, *Criminal/Motor Vehicle Case Detail*, https://www.jud2.ct.gov/crdockets/CaseDetailDisp.aspx?source=Pending&Key=2320d8a9-bdf5-4e6a-af16-ddd3643d6118.

On December 1, 2018 Schlosser asked Nurse Droughn, a medical provider at NHCC, to have a lieutenant present when he took his medication. *Id.* at ¶ 37. His request was prompted by an incident on November 26, 2018, when Nurse Droughn verbally harassed him and then issued him a false disciplinary report for using insulting language. *Id.* Nurse Droughn denied Schlosser's request to have a lieutenant present when his medication was dispensed, accused Schlosser of refusing to take his medication and threatened to issue Schlosser a disciplinary report if he did not return to his cell. *Id.* Schlosser returned to his cell without his medication. *Id.* Later that day, Schlosser wrote to Deputy Warden Maldonado about the medication incident that had just occurred and the medication incident that had occurred on November 26, 2018. *Id.* at ¶ 38.

On January 29, 2019, Schlosser was sitting in the dayroom watching television and did not realize that Nurse Carter had come by to dispense medication, because she did not announce herself. *Id.* ¶ 39. When Schlosser realized that he had not gotten his medication, he located her and requested his dose. *Id.* Nurse Carter told him she had already dispensed prescriptions to his dayroom and refused to give him the medication. *Id.* Schlosser wrote to Deputy Warden Maldonado about the incident and his other "medication issues", and sent a copy of the complaint to Medical Supervisor Jones. *Id.* at ¶ 43. Deputy Warden Maldonado and Medical Supervisor Jones confirmed that Schlosser had not received his dosage of Clonidine on January 29th, but informed Schlosser that it was his responsibility to be present for medication call. *Id.*

On February 5, 2019, Schlosser had an appointment with Medical Supervisor Jackson to address his complaint of dry skin. *Id.* at 13 ¶ 42. Schlosser did not speak to Jackson regarding his "medication issue." *Id.* He assumed, however, that she was aware of the issue because he had included it on his inmate request form. *Id.*

On February 7, 2019 at medication call, Nurse Chelsea dispensed only half of Schlosser's dose of Gabapentin to him. *Id.* ¶ 44. When Schlosser told her that he had not received the full dose of Gabapentin, Nurse Chelsea took the half-dose of Gabapentin back from Schlosser and told him that she would return with a full dose. *Id.* at ¶ 44. However, she never returned with the full dose. *Id.* at ¶ 44.

On the morning of May 28, 2019, Nurse Droughn came to Schlosser's cell to give him his dose of Gabapentin. *Id.* ¶ 45. Schlosser observed that Nurse Droughn had already crushed the medication into powder. *Id.* She verbally harassed Schlosser and asked him to stick his fingers in his mouth and open his mouth wider as she checked to make sure that he had swallowed the Gabapentin. *Id.*

On October 17, 2019, Nurse Droughn refused to give Schlosser his morning dose of Gabapentin but scanned the barcode on the medication package as if she had dispensed the medication to him. *Id.* ¶ 46. Schlosser submitted an informal request to Medical Supervisor Cheatman indicating that Nurse Droughn had failed to dispense his morning dose of Gabapentin. *Id.* In response, Cheatman informed Schlosser that his records reflected that he had received all of his medications on October 17, 2019. *Id.*

On October 30, 2019, Schlosser did not receive his dose of Gabapentin. *Id.* ¶ 47. He filed a medical grievance regarding the conduct of Medical Supervisors Cheatman and Jackson. *Id.* Regional Supervisor Kozak is supposed to handle those types of investigations; however, Cheatman improperly handled the investigation into the grievance herself. *Id.*

From December 13 through December 24, 2019, Nurse Droughn stopped using the proper pill crushing device to crush Schlosser's medication; instead, she used the bar code scanner to crush the medication. *Id.* at 15 ¶¶ 48-49. Schlosser contends that the medication is not

supposed to be crushed, and additionally that using the bar code scanner to crush his medications is unsanitary and could have led to him becoming very ill. *Id.* Schlosser submitted daily requests to Medical Supervisors Cheatman and Jackson regarding Nurse Droughn's improper use of the bar code scanner to crush his medication. *Id.* ¶ 50.

At some point during the first two weeks of January 2020, Schlosser met with Deputy Warden Maldonado, Deputy Warden Walker and Counselor Supervisor Tiriolo and made them aware of the ongoing issues with his medication. *Id.* ¶ 51. During the meeting, Schlosser described Nurse Droughn's practice of using unsanitary methods to crush his medication and indicated that Gabapentin is an extended release medication and should not be crushed. *Id.*

In two letters attached as exhibits to the Amended Complaint[5], Schlosser additionally states that the conditions at NHCC are generally unsanitary and hazardous and that the cells are infested with rats, mice, lice, bed bugs and scabies. *See* Exhibit 13, 17 Doc. No. 10-2. He states that the plumbing does not work properly and that as a result, sewage has backed up into the kitchen, contaminating the food that incarcerated individuals are given "via airborne particles." *Id.* NHCC is additionally in a state of disrepair; paint falls from the ceiling, and there is rust and rot on the metal bedframes. *Id.* Schlosser does not address those complaints to any defendants in particular. *Id.*

### 2. MacDougall-Walker Correctional Institution[6]

On January 15, 2020, Schlosser pled guilty to a violation of probation and was sentenced to a five-year term of incarceration in Connecticut Superior Court. *See* STATE OF CONNECTICUT,

---

[5] One letter is not clearly addressed; the other is addressed to Commissioner Renee D. Coleman-Mitchell and Public Health Services Manager Katheen W. Boulware. *See* Exhibit 13, 17 Doc. No. 10-2.

[6] Schlosser does not identify Correctional Officers Jane Doe, John Doe or Nurse Jane Doe as defendants in this action. However, he makes allegations against them the body of the complaint. *See* Am. Compl. Doc. No. 10 at ¶¶ 52-54.

JUDICIAL BRANCH, Criminal/Motor Vehicle Conviction Case Detail,

https://www.jud2.ct.gov/crdockets/SearchByDefDisp.aspx. He was transferred to MacDougall-

Walker Correctional Institution sometime before February 2020. Am. Compl. Doc. No. 10 at ¶

52.

From February to March, Walker Correctional Officials John Doe and Jane Doe crushed

Schlosser's medications with the wrong tools before dispensing them to him. *Id.* at ¶ 52-53.

Schlosser alleges that the use of improper tools to crush the medications was unsanitary and put

him at risk of getting sick, especially in light of the Covid-19 pandemic. *Id.*

On February 15, 2020, Nurse Jane Doe did not dispense Venlafaxine to Schlosser

because the prescription had run out. *Id.* at ¶ 54. She did not follow up with a doctor to get

approval for a refill for the medication. *Id.* Schlosser experienced "brain zaps" as a result of

missing the dose. *Id.*

### 3. Cheshire Correctional Institution

Sometime before March 3, 2020, Schlosser was transferred to Cheshire. *Id.* at ¶ 55. At

evening medication call on March 3, 2020, Nurse Doe 1 did not give him all his prescribed

medications and told him she had been unable to find them. *Id.* She promised to return with the

missed dose, but never came back. *Id.* Later that evening, she told Schlosser the medication was

missing and would need to be reordered. When Schlosser told her that it would take four to five

days to reorder, Nurse Doe said she could take the needed doses from someone else in the

meantime. *Id.*

On March 23, 2020, Nurse Stacy used the corner of the pill crushing device "like a

hammer" to crush Schlosser's Gabapentin tablets while they were still in the package. *Id.* at ¶

56. Schlosser informed Nurse Stacy that the tablets should not be crushed prior to dispensing

them to him and that by crushing them in the package, she was exposing the tablets to potentially unsanitary air. *Id.*

On March 25, Nurse John Doe 1 dispensed Schlosser's Gabapentin to him in crushed form. *Id.* at ¶ 57; Exhibit 14 Doc. No. 10-2. Schlosser informed Nurse Doe that Gabapentin should not be crushed and that he would be filing a medical grievance. *Id.* Nurse John Doe responded: "screw you write me up." *Id.*

On March 27 and 28, 2020, Nurse Stacy dispensed Schlosser's Gabapentin to him in crushed form. *Id.* at ¶¶ 58, 62. Schlosser observed that the tablets had been crushed while they were still in the package. *Id.* Schlosser wrote to two medical supervisors at Cheshire about his medication issues, but received no response. *Id.* ¶¶ 58, 60.

On March 31, 2020, Nurse John Doe 2 stated that he did not care about the Department of Correction Administrative Directives and suggested that Schlosser write him up. *Id.* at ¶ 64. At the time, Nurse John Doe was holding, with his bare hands, a package of Schlosser's Gabapentin tablets that had already been crushed. *Id.*

At some point after that, during morning medication call in North Block, Nurse Julie used the pill crushing tool "like a hammer" and smashed Schlosser's Gabapentin in the package. *Id.* at ¶ 65. On April 1, 2020 during evening medication call, Nurse Doe 2 crushed Schlosser's Gabapentin tablets while they were still in the package, breaking the seal on the package. *Id.* at ¶ 66. Nurse Doe 2 told Schlosser that she did not care about the Department of Correction Administrative Directives. *Id.*

From April 4, 2020 to April 6, 2020, medical staff members provided Schlosser his medications in crushed form. *Id.* at ¶¶ 67-70. He states that he was the only one whose medication was crushed. *Id.* On April 11, 2020 during morning medication call, Nurse Julie used

the corner of the pill crushing device to crush Schlosser's Gabapentin tablets while they were still in the package. *Id.* ¶ 71.

On April 10, Schlosser did not receive his morning dose of Gabapentin. He informed a correctional officer that he had not received his medication, and the officer told him he would call a medical provider. *See* Exhibit 10 Doc. No. 10-2. However, the officer failed to follow up with medical. *Id.* Schlosser states that he could have had a seizure due to the missed dose. *Id.*

On April 12, 2020 during morning medication call, Nurse Natalie dispensed Gabapentin to Schlosser in crushed form and did not give Schlosser his dose of Venlafaxine.  *Id.* ¶ 72. The missed dose of Venlafaxine caused Schlosser to experience "brain zaps", agitation, and irritability. [7] *Id.*

On the morning of April 15, Nurse Natalie used the wrong tool to smash his medication. Exhibit 11, Doc. No. 10-3. Later, on April 15, 2020 during evening medication call, Nurse Odo, who had been assigned to Cheshire on a temporary basis, dispensed Gabapentin to Schlosser in crushed form. *Id.* ¶ 73.  Schlosser observed that Nurse Odo had not used the pill crushing tool to crush the Gabapentin tablets. *Id.* On April 16, 2020, during morning medication call, Nurse Odo dispensed Gabapentin to Schlosser in crushed form. *Id.* ¶ 74. During evening medication call, Schlosser observed that Nurse Odo had crushed the seven remaining tablets of Gabapentin in the prescription package. *Id.* ¶ 75.

On April 17, 2020 during morning medical call, Nurse Natalie dispensed Gabapentin tablets to Schlosser from a new package even though there had been tablets remaining in the previous pack. *Id.* at ¶ 76. During evening medical call that evening, Nurse Odo dispensed Gabapentin to Schlosser in crushed form.  *Id.* ¶ 77. Schlosser informed Nurse Odo that he was

---

[7] Schlosser also refers to this medication as Effexor, which is the brand name for the drug. *See* WebMD, *Effexor, https://www.webmd.com/drugs/2/drug-4896/effexor-xr-oral/details*.

going to write her up and would be contacting the Department of Public Health if she did not

stop crushing his Gabapentin tablets in the package. *Id.* A correctional officer overheard

Schlosser speaking to Nurse Odo and, using obscene language, suggested that Schlosser write

him up too. *Id.* The officer has harassed Schlosser since that incident by looking at him through

the window of his cell door and kicking his cell door to try to intimidate Schlosser. *Id.*

Beginning on April 17, Nurse Odo has consistently smashed Schlosser's entire package

of Gabapentin before dispensing it to him.  *Id.* ¶ 78.  Schlosser has been forced to choose

between taking the medication in crushed form or suffering from withdrawals if he chooses not

to take the medication.  *Id.* at ¶ 78.  He has filed numerous requests and medical grievances

regarding the issues he was having with his medications and received no response. *Id.* at ¶ 78.

Schlosser has asked Officer McMahon on numerous occasions for the names of the

nurses who were hired to work at Cheshire on a temporary basis in March and April 2020. *Id.* at

¶ 61. Officer McMahon has refused to answer and has told him that the Department of

Correction "has nothing to do with them." *Id.* On one of his visits to Officer McMahon's office

in connection with Schlosser's request that a document be e-filed in one of his cases, Officer

McMahon suggested that Schlosser stop submitting requests to preserve video footage. *See* Am.

Compl., Doc. No. 10 at ¶ 79.

## III.   Discussion

Schlosser contends that the defendants have been deliberately indifferent to his serious

medical needs in violation of the Eighth and Fourteenth Amendments by failing to dispense his

prescribed doses of medication on multiple occasions, by crushing the Gabapentin tablets before

dispensing them, and by failing to use sanitary and proper devices to crush the tablets. He seeks

declaratory and injunctive relief.

**1. Eleventh Amendment**

Schlosser sues all defendants in both their individual and official capacities, with the exception of Governor Lamont and Lieutenant Governor Bysiewicz, who he appears to suggest are sued in only an official capacity. Am. Compl. Doc. No. 10 at 2.

The Eleventh Amendment bars suits for money damages against state officials in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court...[t]his bar remains in effect when state officials are sued for damages in their official capacity"). The Eleventh Amendment does not, however, bar suits for money damages against state officials acting in their individual capacities, even if the acts complained of occurred in the course of their official duties. *Hafer v. Melo*, 502 U.S. 21, 31 (1991). State officials may additionally may be sued in their official capacities so long as a plaintiff seeks prospective injunctive relief for violations of constitutional rights or federal law. *See Ex Parte Young*, 209 U.S. 123 (1908); *see also CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002).

To the extent that Schlosser seeks money damages from defendants sued in their official capacities, those claims are dismissed. His claims for money damages against officials sued in their individual capacities and for injunctive relief from officials sued in their official capacities may proceed consistent with the Eleventh Amendment.[8]

**2. Deliberate Indifference Claims Against Correctional Officials Cook, Quiros, Cepelak, Murphy, Director of Health Services Doe, District Administrator Doe, Regional Supervisor Kozak, Governor Lamont, Deputy Governor Bysiewicz**

---

[8] I note that transfer from one facility to another generally moots claims for injunctive relief against officials of that facility. *See Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996). Because I dismiss the claims for injunctive relief, I need not consider whether they are moot by virtue of the transfer.

Schlosser names Deputy Commissioners Cheryl Cepelak and Angel Quiros, Director of Health Services Doe, District Administrator No. 1 Doe, Medical Regional Supervisor Kozak, Director of Programs and Treatment W. Murphy and Deputy Governor Bysiewicz as defendants. However, he does not refer to them in the body of the amended complaint or attached exhibits, or allege any facts supporting the claim that any of those defendants violated his federal or constitutional rights. Similarly, although he refers to an instance when he saw Commissioner Cook and Governor Lamont on television discussing the importance of social distancing, hand washing and "being sanitary" in light of the Covid-19 pandemic, he does not set forth any facts alleging that either defendant violated his federal or constitutional rights. *See* Am. Compl. Doc. No. 10 at ¶ 63. Accordingly, the allegations asserted against Commissioner Cook, Deputy Commissioners Cheryl Cepelak and Angel Quiros, Director of Health Services Doe, District Administrator No. 1 Doe, Medical Regional Supervisor Kozak, Director of Programs and Treatment W. Murphy, Governor Lamont, and Deputy Governor Bysiewicz are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### 3. Deliberate Indifference Claims against NHCC Defendants

On September 13, 2019 Schlosser filed an action alleging that various correctional officials had been deliberately indifferent to his serious medical needs while he was incarcerated at NHCC. *See Schlosser v. Droughn, et al.*, Case No. 3:19-cv-1445 (SRU) (D. Conn. Sept. 13, 2019). The amended complaint in that action names sixteen defendants, including Droughn, Jones, Maldonado, Carter, Chelsea, Cheatham, Cook, Jackson, Kozak, Walker and Tiriolo. *Id.* at Doc. No. 17. Schlosser alleged that the defendants were deliberately indifferent to his serious medical needs by failing to dispense his medications as prescribed and by crushing his medication in an unsanitary manner.

12

A district court enjoys substantial discretion to manage its docket efficiently, and "may dismiss a second suit as duplicative of an earlier suit." *Taylor v. Rodriguez*, 238 F.3d 188, 197 (2d Cir. 2001). Because a plaintiff has "no right to maintain two actions on the same subject in the same court, against the same defendant at the same time" the ordinary course of action in such circumstances is "simple dismissal of the second suit." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000). Absent special circumstances, the first suit filed is generally given priority. *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991). A suit is considered duplicative "if the parties, issues and available relief do not differ significantly between the two actions." *Bester v. Taylor*, 2018 U.S. Dist. LEXIS 103833, at *4 (N.D.N.Y. June 21, 2018). "Courts generally look to the identity of the parties, legal claims, factual allegations including temporal circumstances, and the relief sought to determine if the complaint is repetitive." *Id.* (quoting *Hahn v. Tarnow*, 2006 U.S. Dist. LEXIS 52383 at *11 (E.D. Mich. July 31, 2006)).

Because the claims raised in this action concern whether the defendants violated Schlosser's Eighth Amendment rights by failing to dispense his medications and giving them to him in powder rather than pill form while he was incarcerated at NHCC, they are duplicative of the claims raised in the previously filed action. It would be more efficient and appropriate for those claims to be resolved in that action rather than considered separately here. Accordingly, the claims for deliberate indifference against Maldonado, Walker, Cheatman, Jackson, Jones, Carter, Droughn, Chelsea and Tiriolo are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Schlosser additionally appears to raise new conditions of confinement claims against unspecified NHCC defendants based on the unsanitary condition of the cells (including the infestation of vermin and insects), lack of working toilets, contamination of food and the rust and mold in the facility on the bedframes. *See* Exhibits 13, 17 Doc. No. 10-2. Those new claims

13

relate to his incarceration at NHCC and are unrelated to the other claims brought in this action regarding medical treatment at Cheshire and Walker.

Federal Rule of Civil Procedure 20 permits joinder of multiple defendants in one action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences, and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Because there are no common questions of law or fact between allegations regarding Schlosser's conditions of confinement at NHCC and claims of denial at medical care at Walker and Cheshire, those claims may not be joined in this action. *See Peterson v. Regina,* 935 F. Supp. 2d 628, 638 (S.D.N.Y. 2013) ("Case law makes clear that in the absence of a connection between Defendants' alleged misconduct, the mere allegation that Plaintiff was injured by all Defendants is not sufficient by itself to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a).") (internal quotations omitted); *see also Wilson v. McKenna,* 2015 U.S. Dist. LEXIS 41357, at *16 (D. Conn. Mar. 31, 2015). Accordingly, the NHCC conditions of confinement claims are severed and dismissed without prejudice to refiling. *See* Fed. R. Civ. P. 21 (a court may sever any claim against a party sua sponte); *see also Baltas v. Erfe,* 2020 U.S. Dist. LEXIS 68759, at *109-10 (D. Conn. Apr. 20, 2020) (severing and dismissing claims without prejudice where "the sets of unrelated allegations and defendants are not properly joined in this action").

### 4. Deliberate Indifference Claims Against Walker Defendants

Schlosser contends that various defendants at Walker were deliberately indifferent to his serious medical needs in violation of the Eighth and Fourteenth Amendments by improperly crushing his medications between February and March 2020 and by failing to dispense his

Venlafaxine on the morning of February 15, 2020.

Initially, because Schlosser's allegations concern denial of medical care after sentencing, they are cognizable under the Eighth Amendment rather than the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). The Eighth Amendment's ban on cruel and unusual punishment has been interpreted to prohibit deliberate indifference—by both medical providers and prison officials—to an inmate's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976). Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05. To establish that prison officials or doctors behaved with deliberate indifference, a plaintiff must allege both that a particular medical need was sufficiently serious and also that in failing to provide treatment, the charged official acted with a culpable state of mind. *Salahuddin v. Goord*, 467 F.3d 263, 279-280 (2d Cir. 2006). The seriousness of a particular medical need is often referred to by courts as the "objective" component of a claim for deliberate indifference, while the requisite mental state is referred to as the "subjective" component. *Id.*

Determining whether a medical need is sufficiently serious for purposes of a claim under the Eighth Amendment entails a fact-specific inquiry "tailored to the specific circumstances of each case." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003). Courts in this circuit have considered a variety of factors to make that determination, looking to whether "a reasonable doctor or patient would find [the condition] important and worthy of comment or treatment", whether the condition "significantly affects an individual's daily activities" and whether it causes "chronic and substantial pain." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (internal citations omitted). However, the Second Circuit has held that courts considering claims of a

"temporary delay or interruption in the provision of otherwise adequate medical treatment," should look the effect of the "challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious, to support an Eighth Amendment claim." *Smith*, 316 F.3d at 185 (emphasis in original) (internal citations omitted).

To establish the subjective component of a claim for deliberate indifference, a plaintiff must allege that a defendant "act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin*, 467 F.3d at 280. Deliberate indifference is more than mere negligence; it is "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Id.* Conduct is measured by an objective standard, meaning that an official must be "actually aware of a substantial risk that serious inmate harm will result." *Id.* An allegation that "a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Similarly, a difference of opinion between an inmate and medical provider regarding the appropriate medical treatment does not rise to the level of deliberate indifference. "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703.

### i.     Use of Improper Tools to Crush Medication

Schlosser alleges that between February and March, Correctional Official John Doe used a bottle of Ensure to smash his Gabapentin instead of using the proper device, and that Correctional Official Jane Doe used the pill crusher device in an improper manner to crush his

medications. Am. Compl. Doc. No. 10 at ¶ 52. Schlosser contends that both methods of crushing the pills were unsanitary and put him at risk of contracting Covid-19. *Id.* at ¶¶ 52-53.

Schlosser does not allege that any of the nurses neglected to take the necessary safety precautions while crushing the Gabapentin tablets or dispensing the crushed tablets to him. He also does not allege that he contracted Covid-19 or another virus or infection as a result of the use of an improper device to crush the tablets. Instead, he contends that it was possible the way the pills were crushed could have led to him getting sick. Although an "Eighth Amendment claim may be based on a defendant's conduct in exposing an inmate to an unreasonable risk of future harm and…actual physical injury is not necessary," Schlosser fails to specify how crushing the pills with the wrong tool or using the tool in an improper manner increased the risk that he might contract Covid-19 or another illness. *Smith*, 316 F.3d at 188. Without additional facts establishing that the way the medications were crushed increased the likelihood of exposure to a communicable illness, those allegations are insufficient to establish that the way the pills were crushed created a "substantial risk of serious harm" to Schlosser's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Accordingly, the claims against Correctional Officials John Doe and Jane Doe are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### ii. Missed Dose of Medication

Schlosser contends that on February 15, 2020, Nurse Jane Doe did not dispense his morning dose of Venlafaxine because the prescription had run out. Am. Compl. Doc. No. 10 at ¶ 54. She told him she would follow up with the doctor to get the prescription refilled, but failed to do so. *Id.* Schlosser experienced "brain zaps" as a result of missing the dose. *Id.* However, he received his evening dose of Venlafaxine. *Id.*

Courts have held that denial of a single dose, or even several doses, of a needed medication is insufficient, without more, to establish a serious delay in treatment under the Eighth Amendment. *See Smith*, 316 F.3d at 188–89 (affirming denial of motion for new trial for Eighth Amendment violation where plaintiff "presented no evidence that the two alleged episodes of missed medication resulted in permanent or on-going harm to his health"); *Youngblood v. Artus*, 2011 WL 6337774, at *18 (N.D.N.Y. Dec. 19, 2011) (granting motion to dismiss deliberate indifference claim where the defendant "failed to give [the plaintiff] a single dose of his seizure medication" and the plaintiff did not specify any resulting harm); *Bumpus v. Canfield*, 495 F. Supp. 2d 316, 322 (W.D.N.Y. 2007) (dismissing claim of deliberate indifference based on "a delay of several days in dispensing plaintiff's hypertension medication" absent evidence that "the delay gave rise to a significant risk of serious harm"); *Evans v. Bonner*, 196 F. Supp. 2d 252, 256 (E.D.N.Y. 2002) (granting summary judgment for defendant on claim that medication was not timely distributed even where plaintiff alleged that he had suffered "aches, pains and joint problems" due to withdrawal because "the alleged injury to the plaintiff resulting from not getting his medicine on time does not rise to a sufficiently serious level.").

Schlosser contends that he was not provided a needed dose of Venlafaxine and experienced withdrawal symptoms as a result. However, he states that the prescription was subsequently refilled, and does not allege that he suffered "permanent or ongoing harm" from the missed morning dose. *Smith,* 316 F.3d at 188. Moreover, he does not allege that missing the dose exposed him to a risk of future harm. Because he alleges only that he missed a single dose of medication and suffered short-term symptoms as a result, Schlosser has failed to establish a

sufficiently serious deprivation of medical treatment. Accordingly, the Eighth Amendment claim for deliberate indifference against Nurse Jane Doe is dismissed.[9] *See* 28 U.S.C. § 1915A(b)(1).

### 5. Deliberate Indifference Claims Against Cheshire Defendants

#### i.     Nurses Julie, Stacy, Natalie, Odo, John Does 1 and 2, Does 1 and 2

Schlosser contends that Nurses Julie, Stacy, Natalie, Odo, John Doe 1, John Doe 2, Doe 1 and Doe 2 were deliberately indifferent to his serious medical needs in violation of the Eighth and Fourteenth Amendment by denying him doses of his medication and improperly crushing his medications. As discussed above, because the alleged deprivation of medical treatment occurred while he was incarcerated at Cheshire after sentencing, Schlosser's claims are cognizable under the Eighth rather than the Fourteenth Amendment. *Darnell*, 849 F.3d at 29.

#### a.  Missed Doses of Medication

In his amended complaint and attached exhibits, Schlosser alleges that he missed doses of unspecified medication on March 3, 2020, when Nurse Doe 1 was unable to find all his prescribed medications; on April 2, 2020 when Nurse Nicole (not named as a defendant) did not have his Clonidine; on April 10, 2020; and on April 12 and 13, 2020 when Nurse Natalie did not have his Effexor (the brand name for Venlafaxine). *See* Am. Compl. ¶¶ 55, 72; Exhibits 1-17. On April 10, when he did not receive his Gabapentin, he contends that he could have suffered a seizure, and additionally states that on April 12, 2020 because of missing a dose of Venlafaxine, he experienced "brain zaps and agitation and irritability." *Id.* at ¶ 72.

---

[9]  I note additionally that the allegations against the Walker defendants are unrelated to the claims against either the NHCC or Cheshire defendants and therefore could not properly be joined in this action were I to permit the claims to proceed for purposes of initial review, as discussed above. *See* Fed. R. Civ. P. 20(a)(2). Because I dismiss the claims, I need not order severance. *Wilson*, 2015 U.S. Dist. LEXIS 41357, at *17.

As discussed above, without additional details establishing serious harm or an increased risk of future harm, allegations that a plaintiff did not receive a single dose of a needed medication are generally insufficient to establish a sufficiently serious delay in medical treatment. *See Youngblood*, 2011 U.S. Dist. LEXIS 145470, at *19. With regard to the claim against Nurse Doe 1, Schlosser alleges only that he missed a dose of his medications, and sets forth no additional facts that would support a finding that the delay in treatment was objectively serious for purpose of the Eighth Amendment. Similarly, although Schlosser alleges that he did not receive his dose of Venlafaxine on two successive days and experienced withdrawal symptoms as a result, he does not allege that he experienced any further or lasting symptoms once he again began receiving the proper dose. Am. Compl. Doc. No. 10 at ¶ 72. Those allegations are insufficient to establish that the delay in treatment was objectively serious for purposes of the Eighth Amendment. Accordingly, the claims against Nurse Doe 1 and Nurse Natalie for failing to dispense various doses of Schlosser's medications are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Schlosser does not identify Nurse Nicole as a defendant in the body of the complaint, but instead attaches an inmate request form to the complaint reporting that she failed to dispense his Clonidine on the morning of April 2, 2020. *See* Exhibit 11, Doc. No. 10-3 at 2. However, Schlosser does not allege that he that he experienced any symptoms as a result of not receiving his Clonidine. *Id.* Accordingly, even if he had named Nurse Nicole as a defendant in this action, that claim would be insufficient to establish deliberate indifference.

### b.    Crushed Gabapentin Tablets

Schlosser alleges that on various days in March and April 2020, Nurses Julie, Stacy, Odo, Natalie, John Doe 1, John Doe 2, Doe 1 and Doe 2 improperly dispensed his Gabapentin tablets

to him in crushed form. Schlosser contends that Gabapentin tablets should not be crushed because they have "a time-release outer coating." Am. Compl. at ¶ 41. However, Schlosser does not allege that crushing the pills rendered them ineffective at treating his mental health or medical conditions or that he experienced any negative symptoms or side effects as a result of ingesting the Gabapentin in crushed form.

Without additional facts establishing that the crushed form prevented the pills from being effective, allegations that the pills were dispensed in crushed rather than tablet form merely express disagreement with the form in which treatment was provided, rather than alleging denial of medical care. *See Chance*, 143 F.3d at 703 ("[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation"). Accordingly, the Eighth Amendment claim related to the form in which Nurses Julie, Stacy, Odo, Natalie, John Doe 1, John Doe 2, Doe 1 and Doe 2 dispensed Gabapentin to Schlosser in March and April 2020 is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### c. Tool Used to Crush Gabapentin Tablets

Schlosser contends that in March and April 2020, Nurses Julie, Stacy, Odo, Natalie, John Doe 1, John Doe 2, Doe 1 and Doe 2 improperly used the pill crushing device as a hammer to crush his Gabapentin tablets and did so while the tablets were still in the sealed package.  He contends that using the pill crushing device in an improper and unsanitary manner subjected him to possible COVID 19 exposure or exposure to another virus or infection.

As discussed above, allegations that the wrong tool was used to crush Schlosser's medications do not establish that the pills were dispensed in an unsanitary way that increased his risk of developing a serious illness or contracting Covid-19. Accordingly, the Eighth

Amendment claim against Nurses Julie, Stacy, Odo, Natalie, John Doe 1, John Doe 2, Doe 1 and Doe 2 is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### ii.    Medical Supervisors Cassandra Miller and Mark V

In the body of the amended complaint, Schlosser alleges that he made medical supervisors Mark V and Cassandra Miller aware that Nurse Stacy had crushed his Gabapentin but received no response. Am. Compl. Doc. No 10 at ¶¶ 58, 60. He additionally appends as exhibits one complaint addressed to Mark V and Cassandra Miller in which he claims that Nurse Nicole did not have his Clonidine available on April 2, 2020.  *See* Exhibit 16 Doc. No. 10-2. Schlosser indicates in a separate exhibit that both supervisors are liable for the behavior of the nurses under a theory of supervisory liability. *See* Exhibit 7 Doc. No. 10-2.

The Second Circuit recently addressed the requirements for claims of supervisory liability under section 1983, holding that "after *Iqbal,* there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann,* 983 F.3d 609, 618 (2d Cir. 2020). Accordingly, to establish an Eighth Amendment violation, Schlosser must plead that supervisors Mark V and Cassandra Miller "acted with deliberate indifference—meaning that [they] personally knew of and disregarded an excessive risk [his] health or safety." *Id.* at 619 (internal citations omitted).

Schlosser has failed to establish that either supervisor behaved with deliberate indifference to his health or safety. He merely states that both supervisors were aware of the allegedly unconstitutional actions of subordinates. Without more, those allegations are insufficient to establish a claim for a violation of the Eighth Amendment under section 1983.

Accordingly, the claims against Cassandra Miller and Mark V are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### iii.     Warden Buttricks, Deputy Wardens Guadarama and Peterson

Schlosser identifies Warden Buttricks, Deputy Warden Guadarama, Deputy Warden of Programs and Treatment Peterson as defendants in the amended complaint.  However, Schlosser does not allege any facts supporting a claim that any of those defendants violated his federal or constitutional rights. He does attach as exhibits to the amended complaint three inmate request forms that he submitted to the warden and deputy wardens alleging that unspecified nurses were behaving unprofessionally, that a "Nurse Ubu" repeatedly smashed his sleeves of Gabapentin, and finally that when he informed two unidentified correctional officers that he did not receive a dose of Gabapentin on April 10, 2020, they did not follow up with medical providers to ensure Schlosser received the dose. *See* Exhibit 2, 3, 10 Doc. No 10-2. Schlosser contends he could have suffered a seizure as a result of the missed dose. *Id.*

As discussed above, claims that the defendant wardens were aware of the allegedly unconstitutional acts of the nurses or officers are insufficient to state a claim for deliberate indifference against the wardens. Because Schlosser does not allege that either of the wardens were personally involved in either the improper dispensation of his medication or the failure to follow up with medical providers on April 10, he has failed to state a claim for deliberate indifference against those defendants. Moreover, Schlosser's claim that his medication was smashed prior to being dispensed does not sufficiently allege deliberate indifference to serious medical needs in violation of the Eighth Amendment, and therefore could not support a claim of deliberate indifference even if he could establish personal involvement by the wardens.

Similarly, he has failed to establish that the officers who failed to follow up regarding the missed dose of Gabapentin acted with deliberate indifference. He states only that when he informed "Officers A and B" that he had not been given a dose of medication, they failed to call a medical provider. Although he states that he could have suffered a seizure as a result of missing the Gabapentin, nowhere does he allege that the officers were aware of that possible risk. *See* Exhibit 10, Doc. No. 10-2. Accordingly, even if Schlosser can establish that the missed dose constituted a sufficiently serious delay in treatment because of the risk of seizure, he has not set forth allegations that either officer acted with the requisite mental state in failing to follow up with medical providers. *See Chance*, 143 F. 3d at 702 ("[a]n official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety").

Schlosser's claims against the wardens therefore fail on two grounds. First, he has failed to establish that any of the complained of actions by nurses and correctional officers rose to the level of an Eighth Amendment violation. Moreover, even if he had adequately pleaded those claims, he has failed to establish that any of the named wardens were personally involved in the alleged constitutional deprivations. Accordingly, the Eighth Amendment claims of deliberate indifference to his medical needs asserted against Warden Buttricks, Deputy Warden Guadarama and Deputy Warden of Programs and Treatment Peterson are therefore dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### iv.    Nurse Doe 3 and Nurse Doe 4

Although Schlosser identifies Nurse Doe 3 and 4 as defendants in the amended complaint, he does not allege any facts in support of the contention that they violated his federal

or constitutional rights in the rest of the complaint or in the attached exhibits. Accordingly, the claims against Nurse Doe 3 and Nurse Doe 4 are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### v. Claims Against Correctional Officer McMahon

Schlosser alleges that during his confinement at Cheshire in March and April 2020, he submitted multiple requests to Officer McMahon to preserve video footage and to provide him with the names of nurses who had been hired to work at Cheshire on a temporary basis. Schlosser attaches to the Amended Complaint four requests directed to Officer McMahon for preservation of video footage and the names of the nurses who worked at Cheshire on a temporary basis.[10] *See* Exhibits 14-16 Doc. No. 10-2. Schlosser additionally alleges that on another date, Officer McMahon told him to stop submitting requests to preserve video footage taken from cameras in the medical department. *Id.* at ¶ 79. However, he does not allege that he refrained from submitting preservation requests or that Officer McMahon denied any subsequent requests.

Allegations that Officer McMahon suggested he stop writing to preserve footage or failed to inform him of the identity of the nurses who worked at Cheshire on a temporary basis do not sufficiently state a claim for deliberate indifference in violation of the Eighth Amendment. Accordingly, Schlosser's claims against Officer McMahon are dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1).

### III.   Motion for Preliminary Injunction and Temporary Restraining Order

Schlosser has additionally filed a motion for a preliminary injunction and for a temporary restraining order. *See* Mot. for Inj. Doc. No. 9. In that motion, he describes multiple conditions to

---

[10] McMahon appears to have responded to the written complaints directing Schlosser to be more specific in his requests about video preservation and to "write medical" with regard to his questions about the identity of the nurses. *Id.*

which he claims to have been exposed at Cheshire in March and April 2020 and seeks ten

different forms of injunctive relief. Only three of the ten requests for relief—a request for an

order directing that nurses may not crush medication, appointment of a special prosecutor to

investigate the crushing of Schlosser's medication and an order that Nurse Odo cannot work in

his housing unit—relate to claims in the amended complaint. *See* Mot. for Inj. Doc. No. 9 at 3-4.

Schlosser additionally raises new claims in his motion, stating that staff members at

Cheshire refuse to wear masks consistently, refuse to clean showers and tables on a daily basis

leaving them infested with insects, and prohibit inmates from using a liquid cleaning solution in

their cells. The motion also describes alleged verbal threats made against him by a correctional

officer. *See* Mot. for Inj. Doc. No. 9 at 1-2.  He seeks various forms of relief related to those new

claims including an order directing prison officials at Cheshire to: supply inmates with bars of

antibacterial soap and a cleaning solution to sanitize their cells; permit inmate access to

library/books and either indoor or outdoor recreation on a regular basis; preserve video footage

from all stationary cameras at Cheshire; investigate malicious conduct by staff members and;

transfer a captain and correctional officer from Schlosser's housing unit. *Id.* at 3-4. He

additionally asks that the court deem his confinement illegal if the conditions are not rectified.

*Id.* at 3-4.

To prevail on both a temporary restraining order and motion for preliminary injunctive

relief, a party must demonstrate "that he is likely to succeed on the merits, that he is likely to

suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his

favor, and that an injunction is in the public interest." *Glossip v. Gross*, 135 S. Ct. 2726, 2736

(2015) (internal citations omitted); *see also Andino v. Fischer*, 555 F. Supp. 2d 418, 419

(S.D.N.Y. 2008) ("[i]t is well established that in this Circuit the standard for an entry of a TRO is

the same as for a preliminary injunction.") (collecting cases). To establish irreparable harm, a plaintiff must establish harm that is "actual and imminent" rather than "remote or speculative." *Pisarri v. Town Sports Int'l, LLC*, 758 F. App'x 188, 190 (2d Cir. 2019) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (internal quotation marks omitted)).

Because a party must establish a likelihood of success on the merits in order to justify preliminary injunctive relief, any request for injunctive relief must relate to the claims at issue in the underlying action. *See, e.g., De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) (preliminary injunction appropriate to grant intermediate relief of "the same character as that which may be granted finally," but inappropriate where the injunction "deals with a matter lying wholly outside of the issues in the suit"); *Torres v. UConn Health*, 2017 U.S. Dist. LEXIS 138366, at *3-4 (D. Conn. Aug. 29, 2017) (preliminary injunctive relief not warranted because claim in motion was unrelated to underlying claims in complaint).

Schlosser fails to establish that either preliminary injunctive relief or a temporary restraining order is warranted in this case. As discussed above, Schlosser's claims with regard to missed doses of medication, the dispensation of his medications in powder rather than pill form and the use of improper tools to crush the pills do not establish deliberate indifference to his serious medical needs. Accordingly, Schlosser cannot establish that he is likely to succeed on the merits of the underlying action, and therefore cannot demonstrate that preliminary injunctive relief should be granted.[11] Additionally, he may not seek preliminary injunctive relief for

---

[11] Schlosser also contends that the crushing of his medication violates federal regulations pertaining to the Protection and Advocacy for Mentally Ill Individuals Act of 1986 ("PAMII"), codified at 42 U.S.C. §§ 10801 – 10805. *See* Mot. for Inj. Doc. No. 9 at 3. That claim is not included in the amended complaint. Furthermore, PAMII does not create a private right of action. *See Brown v. Semple*, 2016 U.S. Dist. LEXIS 108012, at *9 (D. Conn. Aug. 16, 2016) ("[a] review of the language and terms of PAIMII indicates that no individually enforceable private rights are conferred under it.") (collecting cases).

conditions of confinement at Cheshire unrelated to the claims regarding deliberate indifference to his medical needs. *See Mitchell v. N.Y. State Dep't of Corr. Servs.*, 2011 U.S. Dist. LEXIS 127415, at *9 (W.D.N.Y. Nov. 2, 2011) (denying plaintiff's request for preliminary injunctive relief because "the facts underlying the request for injunctive relief [were] essentially unrelated to the underlying facts of the claims in this action, except for the fact that they arise in the prison context"). Accordingly, the motion seeking a temporary restraining order and a preliminary injunction is denied in all respects. To the extent that Schlosser seeks to raise unrelated claims regarding conditions at Cheshire, he must do so in a separate action.

## IV.    Conclusion

All claims asserted against Commissioner Cook, Deputy Commissioners Cheryl Cepelak and Angel Quiros, Director of Health Services Doe, District Administrator No. 1 Doe, Medical Regional Supervisor Kozak, Director of Programs and Treatment W. Murphy, Correctional Officer McMahon, Governor Lamont, and Deputy Governor Bysiewicz and the Eighth and Fourteenth Amendment deliberate indifference to serious medical needs as asserted against Warden Buttricks, Deputy Warden Guadarama, Deputy Warden of Programs and Treatment Peterson, Medical Supervisors Mark V. and Cassandra Miller and Nurses Julie, Stacy, Natalie, Odo, John Doe 1, John Doe 2, Doe 1, Doe 2, Doe 3 and Doe 4 are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

The claims related to Schlosser's confinement at NHCC asserted against Deputy Wardens Jeanette Maldonado and Walker, Medical Supervisors Cheatman, Jackson and ASN Jones, Nurses Linda Carter, Shannon Droughn and Chelsea and Counselor Supervisor Tiriolo are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915A(b)(1) as barred by the prior pending action doctrine. The NHCC conditions of confinement claims are **SEVERED** and

**DISMISSED without prejudice** to refiling pursuant to Federal Rule of Civil Procedure 20 and 21 because they are improperly joined in this action.

The claims asserted against unnamed defendants at Walker are **DISMISSED**.  The Motion for Preliminary Injunction and Temporary Restraining Order, [**Doc. No. 9**], is **DENIED** and the Motion for Appointment of Counsel, [**Doc. No. 4**], is **DENIED** as moot. To the extent that Schlosser seeks to raise claims regarding conditions of confinement at Cheshire, he must do so in a separate action rather than a motion for preliminary injunction regarding lack of access to medical care.

The Clerk is directed to enter judgment for the defendants and to close this case.

SO ORDERED.

Dated at Bridgeport, Connecticut this 24th day of March 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge